IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOSE ESPINOZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-16-55-F |
| v. | ) | |
| | ) | |
| J. BREWSTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

Plaintiff, a California state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. § 1983. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). An initial review of the sufficiency of the cause of action under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) has been conducted, and based upon this review and the findings set forth herein the undersigned recommends that the cause of action be dismissed upon filing pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

I. Statutory Screening of Prisoner Complaints

Federal district courts must screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A(a). Additionally, with any litigant who is proceeding *in forma pauperis*, the court has a duty to screen the complaint to

1

determine its sufficiency. See 28 U.S.C. § 1915(e)(2). In this initial review, the court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

To survive this review, the plaintiff must plead "enough facts to state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In applying this standard the court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the plaintiff. See Leverington v. City of Colo. Springs, 643 F.3d 719, 723 (10th Cir. 2011).

Although a *pro se* litigant's pleadings are liberally construed, Haines v. Kerner, 404 U.S. 519, 520 (1972), the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997). See Yang v. Archuleta, 525 F.3d 925, 927 n. 1 (10th Cir. 2008)(court reviewing *pro se* complaint does not "assume the role of advocate")(quotations and citation omitted). Further, a claim is frivolous "where it lacks an arguable basis either in law or in fact" or is "based on an indisputably meritless legal theory." Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989).

II. Plaintiff's Claims

Plaintiff filed an initial Complaint in this action on January 15, 2016.[1] The Complaint

---

[1] Plaintiff is given the benefit of the date he declared under penalty of perjury that he placed a copy of the initial Complaint in the prison mailing system. See Complaint, at 8. See also Houston

2

consisted of 37 handwritten pages setting forth a multitude of claims against twelve Defendants. Because the Complaint was not filed on the proper form for a 42 U.S.C. § 1983 action, Plaintiff was directed to file an amended complaint on the proper form. Plaintiff has now filed an Amended Complaint.[2] Although filed on the proper form, Plaintiff has not fully completed the Amended Complaint form as he merely refers to the claims asserted in a 50-page handwritten attachment labeled "Proposed Amended Complaint."

In this attachment to the Amended Complaint, Plaintiff asserts the following claims:

● A claim of deliberate indifference to his safety needs and "Failure to Train and Failure to Act"[3] related to an alleged physical assault upon Plaintiff by another inmate on January 15, 2014;

● A claim of "Inadequate Medical Care," which is construed as a claim of deliberate indifference to his serious medical needs, related to the alleged injuries Plaintiff received in the physical assault upon Plaintiff by another inmate on January 15, 2014;

● A claim of unconstitutional delay in resolving his grievances;

● A claim based on *respondeat superior* liability against supervisory correctional officials at the Oklahoma private prison, North Fork Correctional Facility ("NFCF"), where the alleged assault occurred and against supervisory correctional officials employed by

---

v. Lack, 487 U.S. 266, 276 (1988); Price v. Philpot, 420 F.3d 1158, 1165 (10th Cir. 2005).

[2]Plaintiff's Motion for Leave to File Amended Complaint (Doc. # 17) is unnecessary given the Court's directive to Plaintiff to file an amended complaint on the proper form. Nevertheless, the Motion is GRANTED.

[3]See "Proposed Amended Complaint," at 9.

3

California.

Plaintiff has also attached to his pleading voluminous records concerning the alleged assault upon Plaintiff and Plaintiff's medical treatment in Oklahoma and in California following the alleged assault. Both the attached "Proposed Amended Complaint" and the exhibits attached to the Amended Complaint are considered part of the Amended Complaint for the purpose of this initial review. See Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)(courts may consider complaint and attached exhibits in evaluating sufficiency of complaint under Rule 12(b)(6)); Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir. 1991)("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.").

III. Plaintiff's Factual Allegations and Evidence

NFCF, which was owned and operated by Corrections Corporation of America ("CCA"), was a private prison operating in Oklahoma that housed California inmates during the relevant time period. NFCF ceased operations in November 2015. Plaintiff alleges in the Amended Complaint that on January 15, 2014, he was incarcerated at NFCF and was assisting Defendant Brewster, a correctional officer at NFCF, in serving the noon meal to inmates in their cells at NFCF. Plaintiff alleges that Defendant "D. Smith through her office window located on the top tier [saw] the plaintiff handing the meal food trays directly into the inmates hands in their cells." Amended Complaint, att. 1, at 11 (ECF page number 13).

Plaintiff alleges that as Defendant Brewster opened cell door 246 and as Plaintiff was holding two meal trays to give to the inmates in the cell one of the inmates in the cell hit the

4

meal tray causing it to strike and injure Plaintiff's face. Plaintiff alleges that the other inmate then began striking Plaintiff's face, eyes, head, and chest area with his fists and that Plaintiff began to defend himself by striking the other inmate with his fists and attempting to prevent the other inmate from striking him. Plaintiff alleges that during this assault Plaintiff fell and hit the back of his head on the concrete floor, "causing plaintiff to black out and loose [sic] consciousness for a few seconds." Amended Complaint, att. 1, at 13.

Plaintiff alleges that Defendant Brewster did not "physically intervene on his behalf" but Defendant Brewster verbally commanded the inmates to get down and disbursed a chemical agent toward Plaintiff and the other inmate. Plaintiff alleges that two NFCF correctional officers, Mr. Sutton and Defendant D. Smith, arrived and also began giving verbal commands for the inmates to get down and disbursed chemical agents toward the Plaintiff and the other inmate. Plaintiff alleges he complied with the correctional officers' commands and he was then placed in hand restraints and transported to NFCF's medical unit.

Plaintiff has attached to the Amended Complaint a copy of a Crime/Incident Report dated January 15, 2014, and signed by Unit Manager S. Bradford. The officer states in this Report that:

> On January 15, 2014, at approximately 1206 hours, Correctional Officer J. Brewster was feeding on the top tier of Alpha North with Inmate J. Espinoza . . . when cell 246 door was opened Inmate C. Martinez . . . immediately exited the cell and began to strike Espinoza with closed fist in the upper torso while Espinoza tried to protect himself. Brewster used his MK9 to gain compliance." Amended Complaint, Ex. D, at 5. In a supplement to the Crime/Incident Report, officer Bradford states that "[w]hen Officer J. Brewster keyed open cell # 246 . . .

5

> Inmate C. Martinez . . . immediately exited the cell and began to strike Inmate J. Espinoza in the facial and upper torso area with clinched fists. Inmate J. Espinoza was on the floor, covering his head with his arms to block Inmate C. Martinez from punching him. J. Espinoza began to fight back with clinched fists and struck Inmate C. Martinez with closed fist to the facial and upper torso area. Officer J. Brewster gave loud verbal commands to both Inmate J. Espinoza and C. Martinez to get down on the floor. Neither Inmate J. Espinoza or C. Martinez complied and continued to strike each other with clinched fist[s]. Officer J. Brewster called a code one, via facility issued radio, and administered 3 short burst[s] of OC inflammatory agents from his facility issued MK9 to the facial areas of both Inmate J. Espinoza and C. Martinez. After being contaminated both Inmate J. Espinoza and C. Martinez continued fighting by striking each other with clinched fists. . . . Correctional Officer J. Sutton and Case Manager D. Smith arrived at the incident. Officer J. Sutton deployed a short burst of OC Pepper Spray from his MK 9 high volume delivery system and D. Smith deployed a short one second burst of OC inflammatory agents from her facility issued MK4 from approximately three feet away, to the facial area of both Inmates J. Espinoza and C. Martinez. Both Inmate J. Espinoza and C. Martinez complied with verbal orders and got down on the ground in the prone position. Both Inmate C. Martinez and J. Espinoza were clothed body searched with no contraband being found, placed in hand restraints and escorted to medical, where they both [were] decontaminated with copious amounts of cool running water for approximately ten minutes. After decontaminating, both Inmate J. Espinoza and C. Martinez received a medical evaluation, no serious injuries were noted that require[d] outside medical attention at this time.

Id. Ex. D, at 6. The report further states that "Chief Busby, ACOS DeHerrera were notified at approximately 1206" and "CDCR D. Ferguson, M. Salinovich, and P. Foster were notified at approximately 1704." Id., Ex. D, at 7.

Plaintiff alleges that he suffered injuries in the assault by the other inmate, which he

describes as "contusions, lumps, two bruised eyes (black eyes), . . . multiple bruises to the head face and torso, swelling and alteration of the face and torso," and a "1.5 cm laceration" underneath his right eye. Plaintiff states that he was then examined by registered nurse ("RN") Butcher in the medical unit and a steri-strip bandage was placed over the small cut under his eye. When asked what happened, Plaintiff alleges he advised RN Butcher that he did not know what happened.

Plaintiff's medical records attached to the Amended Complaint reflect that RN Butcher noted on a progress note that Plaintiff was "decontaminated" because of the chemical spray exposure and that he was observed to have suffered only a small cut under one eye and no other injury. Amended Complaint, Ex. C, at 8. RN Butcher further noted that Plaintiff stated he did not know what happened and that she contacted the facility physician, Dr. Engelman, to evaluate Plaintiff's right cheek laceration.

Dr. Engelman noted on a progress note that he had examined Plaintiff and directed the nurse to clean and place a steri-strip bandage over the "[s]mall, superficial laceration to [Plaintiff's] right cheek [that] did not require suturing." Id., Ex. C, at 9. Dr. Engelman also directed that Plaintiff receive over-the-counter pain medication for a brief period of time.

Plaintiff states that after he was treated in the prison's medical unit he was transferred to NFCF's administrative segregation unit. Three days later, on January 18, 2014, Plaintiff alleges he placed a "sick call request." Plaintiff's medical records indicate he complained of "[b]lurred vision on my right eye periodic and pain in my neck and back" due to the "incident on 1/15/14." Amended Complaint, Ex. C, at 10.

7

On January 21, 2014, Plaintiff was treated by RN Fry who prescribed an analgesic rub for Plaintiff's complaint of back and neck pain and referred Plaintiff for examination by Dr. Engelman. Id., Ex. C, at 11. The nurse noted that Plaintiff stated he was having back pain and periodic blurred vision following an inmate-on-inmate altercation during which he "fell on his face." Id., The nurse also noted that she observed no physical abnormalities during the evaluation of Plaintiff, that an eye exam showed Plaintiff to have near perfect vision, and that Plaintiff was assessed as having an "alteration with comfort [right] back pain."Id., Ex. C, at 12.

Plaintiff was examined by Dr. Engelman on January 27, 2014. According to Dr. Engelman's Progress Notes, Plaintiff advised Dr. Engelman that during an altercation with another inmate on January 15, 2014, he "slipped & fell backwards, striking the right side of the occiput"[4] and was not certain whether or not he lost consciousness. Id., Ex. C, at 15. Dr. Engelman's Progress Notes reflect that he examined Plaintiff and noted his findings and assessment that Plaintiff was status–post "right occipital blunt trauma, with new onset right eye blurred vision, headache, and abnormal neurological exam - suspect post-concussive syndrome." Id. Dr. Engelman noted that he "spoke with Dr. Ivens" and both physicians

---

[4]Plaintiff alleges that at the time of his initial treatment in the medical unit on January 15, 2014, he stated he did not know what happened and, inconsistently, he "explained to Dr. P. Engelman that he had hit the back of his head on the concrete floor." Amended Complaint, att. 1, at 23. Plaintiff's own medical records show that when he was treated in the NFCF medical unit on January 15, 2014, he stated he did not know what happened during the altercation. As Plaintiff has not explained this inconsistency in his allegations, the medical records submitted by Plaintiff, which are consistent with his allegation that he advised the medical staff that he did not know what happened during the altercation, are assumed to be correct.

8

agreed to have Plaintiff transported outside of the prison for a computerized tomographic ("CT") scan of Plaintiff's head. Id.

Plaintiff underwent the CT scan testing on January 31, 2014. Before he was transported from the facility, RN Fry noted that Plaintiff stated he was having headaches and occasional blurry vision in his right eye. Id., Ex. C, at 16.

Dr. Engelman noted in a progress note dated February 5, 2014, that the CT scan of Plaintiff's head and a cervical spine x-ray were both normal, and that these results were conveyed to Plaintiff. Id., Ex. C, at 17. Dr. Engelman noted that Plaintiff stated his headaches were decreasing in frequency and intensity and improved with over-the-counter pain medication. Because of Plaintiff's report of continuing "visual changes," Dr. Engelman referred Plaintiff for an optometric examination and renewed his ibuprofen medication. Id.

Dr. Ellis, an optometrist, evaluated Plaintiff at NFCF on February 10, 2014. Dr. Ellis noted that Plaintiff stated his vision in his right eye "has been coming and going" and that he had a concussion a few weeks ago. Id., Ex. C, at 18. Dr. Ellis examined Plaintiff and noted an assessment of borderline glaucoma. He scheduled Plaintiff for further vision testing.

On March 4, 2014, Plaintiff was transported from NFCF for an optometric evaluation. When he returned from this off-site appointment, Plaintiff advised RN Fry that the "eye doctor . . . told me he knew I damaged my eye some how . . . and there is a lot of pressure in my eyes and I may be borderly glaucomic [sic]." Id., Ex. C, at 20. RN Fry noted that Dr. Engelman would review the report.

Plaintiff was again treated in the NFCF medical unit on April 14, 2014. Dr. Ivens

9

noted that Plaintiff stated his headaches and eye pain were better although once or twice a week he felt pressure in his right eye that radiated to the right side of his head, and that this pressure was relieved quickly with over-the-counter pain medication. Id., Ex. C, at 22. Dr. Ivens noted he had directed the medical records department to locate the optometry notes from Plaintiff's off-site optometric evaluation and that Plaintiff was going to be transferred back to California soon. He also noted Plaintiff's right-sided eye pain and headaches were improved, that "Motrin helps, but vision still not the same." Id., Ex. C, at 22-23.

On April 28, 2014, Plaintiff was again treated in the NFCF medical unit. Dr. Ellis, the facility's optometrist, noted that he advised Plaintiff the vision tests previously performed on Plaintiff showed no defect but were not reliable and that Plaintiff would need to have the tests repeated in six months. Id., Ex. C, at 25. The physician noted Plaintiff's current medications included ibuprofen and acetaminophen.

Plaintiff alleges he was transferred from NFCF to the La Palma Correctional Center on May 1, 2014. Plaintiff's medical records reflect that he was examined on June 20, 2014, at the "La Palma Facility" and found to have no severe visual impairment. The examiner noted that Plaintiff's vision testing was negative for glaucoma. Id., Ex. C, at 28. A subsequent medical record of a visual examination of Plaintiff conducted by Dr. Ho in September 2015 reflects that Plaintiff was assessed as having possible scar tissue formation but it was doubtful he had glaucoma. Id., Ex. C, at 29.

IV. Deliberate Indifference to Safety Needs

As Plaintiff's first claim, he alleges a "Failure to train and Failure to act." Amended

Complaint, att. 1, at 9 (ECF page number 11).  Plaintiff contends that Defendant Brewster, in his individual capacity, is liable to Plaintiff due to Defendant Brewster's failure to follow a memorandum in effect at NFCF on the date of the assault and also due to Defendant Brewster's failure to intervene during the alleged assault upon Plaintiff by another inmate on January 15, 2014.

Prison officials have a duty, imposed by the Eighth Amendment, "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). To prevail on a failure to protect claim, the prisoner must show "that he is incarcerated under conditions posing a substantial risk of serious harm," and that prison officials acted with "deliberate indifference to inmate health or safety . . . ." Id. at 834.  Under this standard, liability of a prison official arises only if the officer both (1) knew the inmate faced a substantial risk of serious harm and (2) disregarded that risk by failing to take reasonable measures to abate it.  Id. at 837.

Plaintiff relies on Defendant Brewster's alleged violation of a memorandum to support an inference of deliberate indifference to his safety needs.  In support of this claim, Plaintiff has submitted a one-page memorandum bearing a CCA logo and dated July 15, 2013.  The memo is directed to "All Alpha Staff."  In this memo, Unit Manager S. Bradford states that officers must "[n]ever allow an Inmate to pass the food trays to another Inmate."  Instead, "[t]he Inmate hands you, the staff, the tray.  You then hand the try [sic] to the Inmate at the cell door." Amended Complaint, Ex. A.

Plaintiff alleges that in violation of this memorandum he was directed by Defendant

11

Brewster to hand meal trays directly to inmates on January 15, 2014, and this violation caused his injuries when an inmate assaulted him. But Plaintiff does not allege that the memorandum was a policy enacted by CCA or even by NFCF. Moreover, "a failure to adhere to administrative regulations does not equate to a constitutional violation." Hovater v. Robinson, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citing Davis v. Scherer, 468 U.S. 183, 194, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

On its face, the memorandum sets forth a directive to certain correctional officials by a supervisory official in one unit of NFCF. Plaintiff's own documentary evidence supports the inference that this memorandum did not reflect CCA policy. In a grievance appeal response dated December 9, 2015, two California Department of Corrections and Rehabilitation grievance officers state that

> A review of Corrections Corporation of America (CCA) policy and procedures regarding feeding of inmates to include cell feeding was conducted. CCA does not have a specific policy or procedure in place regarding staff being responsible for handing the food tray to the inmate during cell feeding. Inmates are routinely used in General Population units to help staff feed their units in a safe and orderly manner.

Id., Ex. D, at 22.

Even assuming that Defendant Brewster violated the memorandum on the day of the alleged assault, a violation of a memorandum authored by a supervisory official describing a preferred method for serving meal trays to inmates in that unit, where the memorandum has no stated rationale and does not reflect that it has been adopted as a facility-wide policy or procedure, cannot create an inference of deliberate indifference to a safety need.

Further, Plaintiff's own documentary evidence conflicts with his assertion that the memorandum authored by officer Bradford had a causal connection to his alleged injuries. In a disciplinary hearing conducted on February 28, 2014, by Lieutenant S. Giller, officer Giller states his findings that "video evidence depict[ed] Officer Brewster opening cell 246 and Inmate Martinez rush[ing] out and . . . striking Inmate ESPINOZA in the facial and upper torso areas. Inmate ESPINOZA then falls to the ground. Inmate Martinez trips over Inmate ESPINOZA and staggers a couple of feet away. Inmate ESPINOZA then gets up as Inmate Martinez comes towards him trying to strike him again. Inmate ESPINOZA then starts defending himself by striking back." Id., Ex. B, at 12.

Thus, even if Plaintiff was directly feeding inmates their meal trays on the day of the alleged assault, his own documentary evidence reflects that the inmate who assaulted Plaintiff did so immediately after the cell door was opened by Defendant Brewster. Such an assault could have occurred whether or not Plaintiff was directly handing meal trays to inmates.

Plaintiff does not allege that Defendant Brewster, Defendant Smith, or any correctional officer at NFCF was aware of a significant threat to Plaintiff's safety by the inmate who allegedly assaulted Plaintiff in January 2014. Plaintiff has failed to state a plausible claim of a constitutional deprivation with his claim of deliberate indifference to his safety needs.

Plaintiff also alleges that "a failure to train" occurred. However, Plaintiff has not explained how any deficiency in training "actually caused" a constitutional violation. City

13

of Canton v. Harris, 489 U.S. 378, 391 (1989).

Plaintiff also alleges that Defendant Brewster took no action to stop the assault. However, Plaintiff's own documentary evidence reflects that Defendant Brewster did take action to stop the fighting, including directing Plaintiff and the other inmate to get down on the ground, employing chemical agents, and calling for assistance from other officers. Plaintiff's own documentary evidence reflects that Plaintiff and the other inmate refused to comply with Defendant Brewster's directives until other officers arrived to assist Defendant Brewster. It was not unreasonable for Defendant Brewster to use verbal commands, chemical agents, and a call for assistance as the means to end the altercation. Plaintiff has not provided facts creating a plausible claim that Defendant Brewster "had a reasonable opportunity to act and simply refused to do so." Raynor v. Pugh, __ F.3d __, 2016 WL 1056091, *3 (4th Cir. 2016)(internal quotation marks and citation omitted). Thus, Plaintiff has not stated a claim of a constitutional deprivation in his first claim.

V. Deliberate Indifference to Medical Needs

In his second claim, Plaintiff contends that Defendants Engelman, Ellis, and Ivens, in their individual capacities, are liable to Plaintiff for their deliberate indifference to Plaintiff's serious medical needs.

In order to state an arguable Eighth Amendment claim, Plaintiff must allege specific facts that demonstrate deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104-06 (1976). "A claim of deliberate indifference includes both an objective and a subjective component." Al-Turki v. Robinson, 762 F.3d 1188, 1192 (10th Cir. 2014).

"A medical need is considered sufficiently serious to satisfy the objective prong if the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 1192-93 (internal quotation marks omitted).

Under the subjective prong, "a prison official may be held liable... only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. To the extent Plaintiff may be asserting an Eighth Amendment claim premised on a delay in providing adequate medical care, he must allege specific facts that demonstrate the delay resulted in substantial harm. See id. at 1193. "[T]he substantial harm caused by a delay in treatment may be a permanent physical injury, or it may be an intermediate injury, such as the pain experienced while waiting for treatment and analgesics." Id. (internal quotation marks omitted).

Plaintiff's allegations and documentary evidence reflect that Defendant Engelman provided medical treatment for Plaintiff on multiple occasions after the alleged physical assault and referred Plaintiff for consultative evaluations and testing on the same date that he first advised the physician that he hit his head during the January 15, 2014 altercation and was experiencing symptoms that the physician assessed as possible post-concussive syndrome. Dr. Engelman referred Plaintiff for CT scan testing and cervical x-rays. Dr. Engelman reviewed those test results and noted that the testing was normal. Also, Dr. Engelman referred Plaintiff for optometric testing based on Plaintiff's complaint of continuing intermittent blurred vision, headaches, and dizziness.

15

Plaintiff's allegations and documentary evidence reflect that Defendants Ellis and Ivens also provided medical treatment for Plaintiff following the alleged physical assault. Dr. Ellis examined Plaintiff in February 2014, assessed Plaintiff as having borderline glaucoma and referred Plaintiff for further vision testing. Dr. Ivens examined Plaintiff in April 2014 and noted that Plaintiff stated his symptoms of headaches and eye pain were better although he was feeling "pressure in his right eye" once or twice a week that was relieved quickly with over-the-counter pain medication. Dr. Ivens noted Plaintiff was advised to return to the medical clinic as needed but that Plaintiff appeared to have an "optometric condition," and Dr. Ivens "[t]asked medical records [department] to locate both optometry notes and put them in [Plaintiff's] chart" so that Plaintiff would have them if he needed further treatment after his impending transfer back to California. Amended Complaint, Ex. C, at 22-23.

Dr. Ellis again examined Plaintiff in April 2014 and advised Plaintiff that the vision testing Plaintiff previously underwent outside of the prison did not provide "reliable results," although "[b]oth showed no defect," and he advised Plaintiff to have the vision testing repeated in six months. Id., at 25.

Plaintiff alleges that he suffered permanent nerve damage in his eye as a result of the inadequate medical care provided to him by Defendants Engelman, Ellis, and Ivens and delay in providing medical treatment for his eye injury. However, Plaintiff's own documentary evidence reflects that he received medical treatment on numerous occasions for his eye injury and related symptoms following the January 2014 altercation. Moreover, Plaintiff has not shown that he was substantially harmed by any delay in the provision of medical treatment

16

for his symptoms. Plaintiff's own documentary evidence reflects that in June 2014 Plaintiff was found to have no severe visual impairment and no glaucoma. Plaintiff has not alleged facts stating a plausible claim of deliberate indifference to his serious medical needs or delay in providing medical treatment for his alleged eye injury resulting in substantial harm.

VI. <u>Delay in Resolving Grievance or Denial of Grievance</u>

Plaintiff alleges that he filed a grievance at NFCF on April 24, 2014, that "was lost by (NFCF) medical department," and that he submitted another grievance that "was denied on August 6, 2014." Amended Complaint, att. 1, at 34 (ECF page number 36). He alleges "E. Sollis was responsible for" the grievances submitted to the medical department at NFCF. <u>Id.</u> at 35 (ECF page number 37). Plaintiff has not named "E. Sollis" as a defendant in his Amended Complaint. Plaintiff has not alleged that any of the Defendants named in the Amended Complaint personally participated in the alleged delay in resolving his grievances. Plaintiff has failed to allege a plausible claim of a constitutional deprivation against any Defendant with these allegations.

VII. *Respondeat Superior* Liability

Under 42 U.S.C. § 1983, a defendant may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009). Rather, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." <u>Foote v. Spiegel</u>, 118 F.3d 1416, 1423 (10th Cir. 1997). <u>See</u> <u>Dodds v. Richardson</u>, 614 F.3d 1185, 1194 (10th Cir. 2010); <u>Gallagher v. Shelton</u>, 587 F.3d 1063, 1069 (10th Cir. 2009). Thus, allegations of "personal participation

in the specific constitutional violation complained of [are] essential." Henry v. Storey, 658 F.3d 1235, 1241 (10th Cir. 2011).

Although a defendant can be liable in a § 1983 action based on his or her supervisory responsibilities, a claim of supervisory liability must be supported by allegations that demonstrate personal involvement, a causal connection to the constitutional violation, and a culpable state of mind. See Schneider v. City of Grand Junction Police Dept., 717 F.3d 760, 767-69 (10th Cir. 2013) (discussing standards for supervisory liability).

A plaintiff may establish § 1983 liability of a defendant-supervisor by demonstrating that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Dodds v. Richardson, 614 F.3d 1185, 1199-1200 (10th Cir. 2010) (citation omitted).

Where the allegations against a particular defendant are limited to that defendant's denial of an administrative grievance without any further connection to the underlying violation of constitutional rights, the requisite personal participation is not established. See Gallagher, 587 F.3d at 1069; see also Bertolo v. Benezee, 601 Fed App'x 636, 639 (10th Cir. Feb. 4, 2015)(unpublished op.); Whitington v. Ortiz, 307 Fed. App'x 777, 780 (10th Cir. Jan. 13, 2009)(unpublished op).

Plaintiff has not alleged the personal involvement of Defendants Smith, Bradford, Busby, DeHerrera, Ferguson, Salinovich, or Foster. His allegations against these Defendants show that he is suing these Defendants solely in their capacities as supervisory

18

officials and not on the basis of their personal participation in any of the events underlying his claims for relief. See Amended Complaint, att. 1, at 36-39 (ECF page numbers 38-41).

VIII. Supplemental State Tort Claims

Plaintiff alleges that Defendant Brewster's "actions . . . on purpose to ignore and not follow security safety policy rules and failure to intervene during the violent assault constituted the torts of Breach of Duty and Failure to Protect under the law [sic] of California and Oklahoma." Id., att. 1, at 44 (ECF page number 46). Plaintiff also alleges that Defendants Bradford, Busby, DeHerrera, Ferguson, Salinovich, and Foster committed the "torts of Breached [sic] of Duty and Respondeat Superior under the law of California and Oklahoma." Id., att. 1, at 44-46 (ECF page numbers 46-48). Finally, Plaintiff alleges that Defendants Engelman, Ellis, and Ivens committed the "tort of medical negligence under the law of California and Oklahoma." Id., att. 1, at 46 (ECF page number 48).

With respect to these state tort claims, should the Court adopt the findings and recommendations made herein, there are no remaining federal claims in this case. Under these circumstances, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law tort claims. 28 U.S.C. § 1367(c)(3). See Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir. 1998)(recognizing "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims").

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the cause of action be

dismissed upon filing pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief can be granted and as frivolous. It is further recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law tort claims.

Plaintiff is notified that a dismissal of this cause of action pursuant to 28 U.S.C. §1915A(b) or §1915(e)(2)(B) may constitute one "strike" pursuant to 28 U.S.C. §1915(g) upon affirmance or waiver of his opportunity to appeal. Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by      April 25th, 2016, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of both factual and legal issues contained herein. <u>Moore v. United States of America</u>, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not addressed herein is denied.

ENTERED this    5th    day of    April   , 2016.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE